IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

MATTHEW JEWELL                                                                                                   PLAINTIFF

v.                                        Civil No. 4:10-cv-04176

FORMER SHERIFF LINDA RAMBO                                                                       DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Matthew Jewell (Jewell), filed this case pursuant to the provisions of 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis*.  The case is before me pursuant to the consent of the parties (ECF No. 9).  Jewell is currently an inmate in the Arkansas Department of Correction (ADC), Pine Bluff Unit.  The events that are the subject of this case occurred while Jewell was incarcerated in the Miller County Detention Center (MCDC).  Specifically, Jewell alleges he was assaulted by six fellow inmates.

Defendant, Former Sheriff Linda Rambo (Rambo), has filed a motion for summary judgment (ECF No. 44).  Jewell responded to the motion (ECF No. 49).  The motion is now ready for decision.

**1.  Background**

Jewell was booked into the MCDC on October 3, 2008.  *Defendant's Exhibit* D (hereinafter *Deft's Ex.*).  He remained incarcerated there until he was transferred to the ADC on February 26, 2009.  *Id.*

At the time of the assault, Jewell was housed in Max A pod.  *Deft's Ex.* C at pg. 9.  According to Jewell, it was a twenty-eight man pod with "fifty something people in it."  *Id.*  Since it was overcrowded, inmates were sleeping outside of the cells.  *Id.* at pg. 10.  The bathrooms were located in the cells.  *Id.* at pg. 9.

The day prior to the assault, Jewell was out of toilet paper and on multiple occasions had called over the intercom to the control center for someone to bring him some toilet paper. *Deft's Ex. C* at pg. 10. Finally, Sergeant Drake (Drake) entered the pod and Jewell testified Drake was upset because Jewell had been calling over the intercom. *Id.* When Drake came in, Jewell claims he said: "Where is that baby raper Jewell." *Id.* Nothing else happened that day. *Id.*

The following day, on October 23rd, a bomb threat was called in.[1] *Deft's Ex. C* at pg. 10. The inmates were evacuated. *Id.* Among the officers outside were Deputy Sheriff Jesse Grigsby (Grigsby) and Jeff Nicks (Nicks). *Id.* at pg. 11. Everyone was outside the facility for about an hour. *Id.* During this time, two inmates, Quintwin Arnold (Arnold) and Mike Walker (Walker), started talking to Grigsby and Nicks. *Id.* Nicks told the inmates that there was a "snitch in the group, that they needed to watch out." *Id.* Walker asked Nicks who he was referring to and Nicks pointed to Jewell and identified him as the snitch. *Id.*

Jewell asked who Nicks was talking to. *Deft's Ex. C* at pgs. 11-12. At about that time, the inmates were taken back inside. *Id.* Jewell asked an officer, whose name he could not recall, if he would get somebody "to take care of the situation" for him. *Id.* at pg. 12. The officer said he would. *Id.* About five minutes after he went back inside, Jewell states he had a blanket thrown on top of him and six inmates jumped on him, kicked him, and beat him. *Id.*

At some point, Jewell got the blanket off and tried to get away. *Deft's Ex. C* at pg. 12. According to Jewell, no one in the pod would help him so Jewell went to the door and pressed the call button. *Id.* at pgs. 12-13. When no one answered, he started beating on the door. *Id.* Jewell continued to struggle with the inmates for approximately eight to ten inmates. *Id.* at pg. 13.

Jewell was able to identify three of his attackers, James Byrd (Byrd), Cordarius Morrisse

---

[1] Jewell believed the date of the attack was October 27th. *Deft's Ex. C* at pg. 8. However, the hospital records and nurse notes are dated October 23rd. *Deft's Exs.* A-B.

(Morrrisse), and Timothy Holland (Holland).  *Deft's Ex*. C at pgs. 14-15.  Criminal charges were brought against these individuals.  *Id*.  Prior to the attack, Jewell had no arguments with these inmates and got along with them just fine.  *Deft's Ex*. C at pg. 15.

At 3:00 p.m., Jewell was escorted to the intake area by Officer Williams (Williams).  *Deft's Ex*. B.  He was seen by the nurse who noted red and purple swollen areas to his left eye lid, a one inch scratch on the upper left forehead, a slightly bleeding nose, a pecan sized edematous behind his left ear, a small cut on his upper left, and an egg size edematous area to the left forearm just above the wrist.  *Id*.  It was also noted he had multiple abrasions.  *Id*.  At 4:00 p.m., Dr. Stringfellow stated Jewell should be transferred to the St. Michael Emergency Room.  *Id*.

Jewell was treated at the Christus St. Michael Health Care System in Texarkana, Texas. *Deft's Ex*. A.  Jewell reported he had been "jumped" and complained of head, nose, and left rib pain.  *Id*. at pg. 5.  He was noted to have a left black eye.  *Id*.  A CT scan showed he had some left periorbital soft tissue swelling and some edema and/or a hematoma in the scalp in the left frontoparietal region.  *Id*. at pg. 1.

After he arrived back at the MCDC, Jewell was housed in West B on the opposite end of the Max felony side of the facility.  *Deft's Ex*. C at pg. 18.  After a period of time, Walker was allowed to come into West B.  *Id*.  According to Jewell, Walker asked two or three inmates, he was selling cigarettes to, how much it would cost for them to jump on Jewell.  *Id*. at pg. 19.  At the time, Jewell states Walker was standing right next to Jailer D. Arnold.  *Id*. at pg. 20.  As soon as they left, Jewell called his mother and had her call the MCDC to ask for Jewell to be moved before he "got jumped." *Id*. at pg. 20.  Approximately, twenty minutes later, Jewell states Drake and another officer came and moved Jewell to a single man cell.  *Id*.

Jewell also believed Nicks and Grigsby were related by marriage to the individual Jewell was

convicted of raping. *Deft's Ex.* C at pg. 21. Jewell believes this is what motivated Nicks and Grigsby to call Jewell a snitch. *Id.* at pg. 22. Jewell also believes the assault may have been racially motivated. *Id.* at pg. 24. According to Jewell, he was not viewed as being of African-American descent and not in their gang. *Id.*

Jewell also testified there was a history of racially motivated assaults at the MCDC. *Deft's Ex.* C at pg. 25. However, when asked to state when these assaults had occurred, Jewell could only identify one assault that occurred a week after the assault on him. *Id.*

With respect to Rambo, Jewell believes she is liable for the assault because she was in charge at the time. *Deft's Ex.* C at pg. 26. He testified he had no other reason to believe Rambo should be liable. *Id.*

After he was transferred to the ADC, Jewell maintains he was attacked by the same gang the inmates who attacked him at the MCDC were affiliated with. *Deft's Ex.* C at pg. 15. Jewell believes a "hit" was put out on him. *Id.* When he was first transferred to the ADC, Jewell indicates he told officials that he had "charges on" Holland, Morrisse, and Byrd. *Id.* at pg. 17. He believed this should have been enough for officials to make sure he was not housed with these individuals. *Id.* Additionally, Jewell states he believed Miller County was going to make sure he was not housed anywhere near them. *Id.*

### 2.  Applicable Standard

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 3. Arguments of the Parties

Based on Jewell's own testimony, Rambo maintains the subjective component of the failure to protect claim cannot be satisfied. Rambo points out that Jewell had never complained about any risks to his safety to anyone employed at the MCDC. Thus, Rambo maintains there is no way she could have known about the potential assault or could have done anything to prevent it.

Plaintiff maintains that, if Rambo had not allowed the pods to be overcrowded and would have had enough employees on duty, he would have been unharmed. Instead, he maintains he was subjected to a hostile and unsafe living environment. Additionally, he states MCDC employees called him a "baby raper," a snitch, and allowed inmates to discuss the price of jumping on him.

### 4. Discussion

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. "A prisoner's conditions of confinement, including the safety measures taken to protect prisoners, are subject to scrutiny under the Eighth Amendment." *Davis v. Oregon County, Missouri*, 607 F.3d 543, 548 (8th Cir. 2010). Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *See e.g., Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998).

To prevail on his failure to protect claim, Jewell must: first prove "he was incarcerated under conditions posing a substantial risk of serious harm." *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011). This is an objective requirement "to ensure the deprivation is a violation of a constitutional right." *Id.* "The second requirement is a subjective test; the defendant must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Schoelch v. Mitchell*, 625 F.3d 1041, 1046 (8th Cir. 2010)(internal quotation marks and citation omitted). "An official's negligence alone is insufficient to meet the subjective component because the official must recklessly disregard a known, excessive risk of serious harm

to the inmate." *Davis*, 607 F.3d at 549 (internal quotation marks and citation omitted).

In this case, there is simply no basis on which Rambo can be held liable. Rambo cannot be held liable merely because she was in charge of the facility at which Jewell was attacked by fellow inmates. *Lenz v. Wade*, 490 F.3d 991, 995-96 (8th Cir. 2007)(Single incident, or series of isolated incidents, insufficient to provide basis for supervisory liability). Jewell had not been involved in any altercations at the detention center prior to October 23rd. Prior to the day of the assault, he testified he had no problems with the inmates who assaulted him. Although he maintains the overcrowding resulted in the creation of an unsafe environment, he did not witness any fights prior to the attack on him, did not report any violent confrontations, and did not suggest that the conditions were such that some type of inmate violence was imminent. With respect to the attack on Jewell, there is no indication Rambo was present at the time of the attack, was aware of Jewell having been referred to as a baby raper and a snitch, or played any part in either provoking the attack or failing to respond promptly when Jewell was attacked.

### 5. Conclusion

For the reasons stated, by a separate judgment entered this same day, the Defendant's motion for summary judgment (ECF No. 44) will be granted.

**DATED** this **6th day of March 2012.**

                                                              /s/ Barry A. Bryant
                                                              HON. BARRY A. BRYANT
                                                              UNITED STATES MAGISTRATE JUDGE